LEVIS v. CITY OF NEWTON et al.

(Circuit Court, S. D. Iowa, C. D. August 18, 1896.)

No. 2,342.

1. GAS AND ELECTRIC LIGHTING—USE OF STREETS—GRANT BY CITY.

Prior to Act Iowa April 9, 1888, expressly giving power to cities to establish and maintain gas and electric plants, cities of the second class had, by virtue of the general grant to them of authority to light streets and public places, power to grant franchises to use the streets for the construction and operation of such plants.

2. SAME—EFFECT OF INVALID CLAUSE.

An ordinance granting the perpetual use of city streets for a gas or electric plant is not invalid, even though the provision that such grant shall be perpetual should be held invalid.

3. CONSTRUCTION OF ORDINANCE—PRESUMPTION.

If an ordinance granting the use of city streets for gas or electric lighting does not disclose whether the use is for public or private purposes, the court will presume, in favor of the validity of the ordinance, that the use is for public, and not private, purposes.

4. GRANT OF FRANCHISES—WITHDRAWAL BY CITY.

An ordinance granting the right to use streets for gas or electric purposes cannot be repealed or modified by the city council, in the absence of any constitutional or statutory provision, or any reservation in the ordinance itself, authorizing such repeal or modification.

This was a bill by Howard C. Levis, trustee, against the city of Newton, A. K. Kufton, mayor, and the Newton Electric Company. On application for preliminary writ of injunction.

Gatch, Connor & Weaver and James S. Cummins, for plaintiff.

Guernsey & Bailey and O. C. Meredith, for defendants.

WOOLSON, District Judge. As the hearing for injunction was had upon the bill, with affidavit of plaintiff sustaining the averments of facts therein, the substance of the bill should here be stated:

The defendant city of Newton is a municipal corporation (city of the second class) organized under the General Statutes of Iowa. In January, 1887, the city council of said city duly enacted an ordinance (No. 129) providing that:

H. M. Vaughn and his assigns are hereby granted the right and privilege to place in the streets and alleys of the city of Newton poles for the purpose of supporting wires, and to place upon such poles such wires as may be necessary to transmit electric power and incandescent electric light; the placing of said poles to be subject to the advice and control of a committee to be appointed for that purpose by the city council: provided, that such poles and wires shall be placed in such a way as not to obstruct the free use of or travel over said streets and alleys in which the same shall be placed.

Sections 2 and 3 provide that, if any such poles or wires are so placed as to interfere with such free travel and use, Vaughn must, on written notice, change location of same, so same shall not so interfere, etc.; and if, being thus notified, he shall not immediately so change place of location, the city council shall so change same at his expense.

Sec. 4. The right and privileges hereby granted by this ordinance shall be permanent and perpetual.

That forthwith, and relying on said ordinance, said Vaughn proceeded to erect and build an electric light plant, set poles, string wires, etc., and on August 1, 1887, had such plant in operation, and was engaged in supplying light and power to the inhabitants of said city, the expenditure therefor and therein amounting at that date to $12,500. On October 21, 1887, said Vaughn assigned, transferred, and set over to the Thomson-Houston Electric Company all his rights and privileges and franchises derived under said ordinance; and said grantee took possession of said plant, and operated same until March, 1896, when said company sold and transferred said electric light plant, and property, rights, franchises, and privileges, to the defendant Newton Electric Company, a corporation duly incorporated under the General Statutes of Iowa. As part of the consideration of said sale, said Newton Electric Company executed its promissory notes for $10,000, and, to secure same, executed a trust deed upon all its plant, property, etc., plaintiff being named therein as trustee, which said notes are wholly unpaid. At the date of the enactment of above-named Ordinance No. 129, an electric plant was being operated in said city of Newton by a company known as the Newton Electric Light Company, with whom said city had previously contracted for furnishing electric lights for street purposes,—said contract, by its terms, to continue until January, 1890; and said last-named company did furnish electric light thereunder until April, 1888, when said company became insolvent, and assigned its said contract to said Thomson-Houston Company, which last-named company connected its plant and wires with the wires of said Newton Electric Light Company, and proceeded to fill the said contract of street lighting. On April 16, 1888, the city council of defendant city of Newton ratified said assignment of said contract, and authorized said Thomson-Houston Electric Company to carry out said street-lighting contract; and the last-named company furnished such street lighting thereunder until in January, 1890, using the plant, poles, and wires erected by said Vaughn under said ordinance, but expending in completing, etc., its plant for fully carrying out said contract, an additional sum of $4,000. About January, 1890, said city of Newton constructed a city electrical plant, for furnishing electric light and power to its streets, and also to the inhabitants of said city, in active competition with said electric company, and has since continued so to do. Said city has a population of about 3,500, and electric lighting for the streets of said city is supplied by the city plant, while the private lighting by electricity is about evenly divided between said city plant and that of said Newton Electric Company. On March 30, 1896, the city council of Newton passed an ordinance (No. 211) entitled

An ordinance to repeal Ordinance No. 129, and to require the removal of the poles and wires placed in the streets and alleys of the city of Newton thereunder, and to prohibit the further erection of poles and wires in said streets and alleys.

By the first section of this ordinance, Ordinance No. 129, above given, is "hereby, in all respects, repealed." Section 2 provides:

That it shall be the duty of every person or corporation now maintaining poles in the streets and alleys of the city of Newton, and claiming to have erected the same under the said Ordinance No. 129, to remove the same from the said streets and alleys within ninety days after this ordinance shall take effect.

Section 3 provides that the ordinance shall take effect five days after its passage and publication, etc., and the bill avers due publication thereof.

The bill further alleges that the construction and operation of the electric plant now owned by said Newton Electric Company, and the occupation, under the provisions of said Ordinance 129, of the streets, etc., of the city with its poles and wires, were not for private use, but—

Only for public use, and for the supply of light and power to said city and all its inhabitants, equally, whenever requested by them, and at just and reasonable rates; that said Newton Electric Company and its assigns have been at all times, and are now, able, ready, and willing to perform such public service upon just and reasonable terms of compensation; and that the sole design and purpose of said city of Newton in attempting to repeal said Ordinance No. 129 was and is to prevent competition with its own electric plant, to drive said Newton Electric Company out of the electric lighting business in said city, and to practically destroy, or render worthless, its plant, machinery, and appliances.

It is further alleged that said Newton Electric Company has no other assets or property than that included in the trust deed to plaintiff, and that the removal of said poles and wires from the streets and alleys of said city would destroy the only security held or attainable by plaintiff for the notes secured by his trust deed, and that said repealing ordinance is void, as (1) impairing the obligation of a valid contract between the city and said Newton Electric Company, and between said city, said company, and plaintiff; as (2) depriving said company and plaintiff of their property without due process of law; as (3) denying said company and plaintiff the equal protection of the laws; and (4) taking said property for public use without compensation.

The issues presented on the hearing relate almost entirely to the right or legal power of the city of Newton to grant the franchise in said Ordinance No. 129 attempted. On the one hand, plaintiff contends that said ordinance granted to Vaughn and his assigns a valid, irrevocable franchise to use the streets of said city in the operation of the electric plant which was erected and put in operation under said ordinance. This, of course, involves the further assertion that the municipality of Newton had been authorized, by legislative delegation of power, to grant such a franchise. On the other hand, the defendants contend that no such legislative delegation of power existed at the date of the passage of said Ordinance No. 129, and therefore, of necessity, no grant of franchise passed under or by virtue of such ordinance. Defendants concede that, if said ordinance conferred a valid franchise on Vaughn and his assigns, the city could not repeal the same in the manner attempted by subsequent Ordinance No. 211. Stated more specifically, defendants' contention is: (1) The grant attempted in said Ordinance No. 129 is absolutely void. (2) In no event could said grant,

if of any validity, be considered as more than a license revocable at the election of the city. (3) The city could not by ratification make valid a grant which was originally invalid.

Judge Dillon, in his valuable treatise on the Law of Municipal Corporations (4th Ed. § 89), defines the powers of a municipal corporation as follows: '

It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, make any contract, incur any liabilities, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void.

And this rule of construction is affirmed by the supreme court of Iowa in Henke v. McCord, 55 Iowa, 381, 7 N. W. 623; Becker v. Waterworks, 79 Iowa, 419, 44 N. W. 694. The principle of construction, with respect to the powers of municipal corporations, laid down by the supreme court of the United States in Minturn v. Larue, 23 How. 435, 436, in the words of Mr. Justice Nelson, is as follows:

It is a well-settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public.

See, also, Ottawa v. Carey, 108 U. S. 110, 121, 2 Sup. Ct. 361, and Barnett v. Denison, 145 U. S. 135, 139, 12 Sup. Ct. 819.

The first, and perhaps the most important, contention herein, is as to what powers with respect to the subject-matter of Ordinance No. 129, above stated, had been delegated by the legislative authority of the state of Iowa to the city of Newton. We turn to the general statutes of Iowa with reference to incorporations of cities of the second class. Counsel for the plaintiff point out in their brief two sections (Code Iowa 1873) which they claim confer this power, viz.:

Sec. 464. They shall have power to lay off, open, widen, straighten, narrow, vacate, extend, establish and light streets, alleys, public grounds, wharves, landing and market places, and to provide for the condemnation of such real-estate as may be necessary for such purpose. ~

Sec. 482. Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this chapter, and such as shall seem necessary and proper to provide the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporation and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days.

These two Code sections seem to constitute the only express delegation of authority to incorporated cities in Iowa, at the date of

the passage of said Ordinance No. 129, with reference to the subject-matter of said ordinance. If this ordinance is rightly construed as having for its purpose to provide for lighting the streets and public places of the city of Newton, many of the obstacles otherwise appearing in the consideration of the matters submitted would not be encountered. According to many well-considered cases, the power granted to the city to light its streets not only authorizes the city itself to furnish the lighting, but, as well, empowers it to contract with others to furnish such lighting. Thus, in Garrison v. Chicago, 7 Biss. 480, Fed. Cas. No. 5,255, Circuit Judge Drummond says:

By its charter, the city had authority to light the public streets, and, it is to be inferred, the public buildings and offices, and to levy and collect a tax for that purpose. The power to provide the necessary means for lighting the streets, buildings, and offices, either by the construction of a gas manufactory or by contract, would seem to follow as a matter of course.

In City of Newport v. Newport Light Co., 84 Ky. 166, 177, the court say:

If it is the duty of the municipality to light its public streets, and furnish its inhabitants with the means of obtaining gas at their own expense, it necessarily follows that it has the implied power to contract with others to furnish it in like manner.

Analogous to this reasoning is that stated by the supreme court of Iowa in Town of Spencer v. Andrew, 82 Iowa, 14, 47 N. W. 1007. Section 456 of the Iowa Code empowers incorporated cites "to establish and regulate markets, to provide for the measuring or weighing of hay, coal or other articles for sale." When considering the question as to the power of a city to permit the erection by one of its citizens of a certain scale in the streets of the city, the court say (page 17, 82 Iowa, and page 1008, 47 N. W.):

If cities and towns may maintain scales of their own, in the public streets, to facilitate the weighing of hay, coal, or other articles of sale, we see no good reason why they may not, under reasonable restrictions, authorize others to maintain scales, whereby the public convenience will be served.

The same general line of reasoning is applied in LeClaire v. City of Davenport, 13 Iowa, 210, 212. In City of Davenport v. Kelley, 7 Iowa, 102, the supreme court of Iowa, in construing the provision of the city charter which gave to the city power "to erect market houses, establish markets and market places, and provide for the government and regulation thereof," had held that the quoted provision did not empower the city, by ordinance, to authorize citizens therein named to erect market houses which should be "public markets," wherein vendors of fresh meats, etc., could be compelled to expose their marketing, but that the quoted provision contemplated "the erection of markets by the city, to be under its entire control, and that it has no right to delegate this power to individuals, for their benefit and profit," etc. In the LeClaire Case, supra, the court reversed its holding, and, in substance, declared that the power given to the city to erect markets authorized the city to confer on, or delegate to others, the erection, etc., of a public market. In Thomson-Houston Electric Co. v. City of Newton, 42 Fed. 723,

725, Judge Shiras, in considering the point therein urged, that by the Iowa statutes the city is not authorized to furnish lights for use in the houses or stores of its citizens, but is restricted to furnishing lights for its streets and public places, says:

It has been the uniform rule that a city, in erecting gasworks, is not limited to furnishing gas or water for use only upon the streets and other public places of the city, but may furnish the same for private use, and the statutes of Iowa now place electric light plants in the same category.

The point now under consideration, as to whether, prior to said statute of April, 1888, an incorporated city in Iowa had legislative authority to make the grant or franchise attempted in this Ordinance No. 129, is of great and wide-reaching importance in Iowa; for the statutes of the state prior to April, 1888, confer no express legislative authority on cities to grant franchises to gas companies. And a holding adverse to such municipal franchise to electric light companies would prove equally disastrous to gas companies. Is it possible that the numerous gas companies within the state, organized before April, 1888, and taking what were then believed to be, and relied upon as being, franchises from different cities of the state, hold merely municipal licenses, which are revocable at the pleasure of the councils of these different cities? Hundreds of thousands of dollars have been invested, in some of these cities, in constructing and extending gasworks and electric plants. Can it be that these vast financial interests are so situated that merely by a repealing ordinance, and notice to the companies interested, requiring them to vacate the streets of the city, those plants and works may be thus destroyed? Manifestly, the value of a gas plant largely consists in its gas mains buried in the streets, and which cannot be readily removed. If the city may, at the pleasure of its council, terminate, by a repealing ordinance, the right theretofore given to use the streets, and thus make further use of the streets in the operation of the plant a nuisance, these plants, with their large capital, are at the pleasure and mercy of the city council.

Counsel for plaintiff insist that the court may well take judicial notice that in most of the older and larger cities of this state the gas and electric plants therein received, prior to April, 1888, the authority or permission, on which they acted, to lay their pipes or erect their poles and wires in the streets of the city, and that if it were permissible to construe the force and effect of legislative authority delegated to our municipalities by the construction which the cities themselves at the time placed thereon, and on the strength of which capital had been invested thereunder, the question under consideration might be quickly decided. If usage could determine the question, it might be readily determined. But mere usage will not here avail us. When treating on usage as affecting municipal powers and their construction, as applied in the United States, Judge Dillon says (section 92, Mun. Corp., 4th Ed.):

It is a necessary result of the manner in which our municipal corporations are created, viz. by express legislative act, wherein their powers and duties are wholly prescribed, that the powers themselves cannot be added to, enlarged, or diminished by proof of usage.

In section 93 this learned writer and jurist adds:

But general and long-continued usage is not without importance, and usage of this character may be resorted to in aid of a proper construction of the charter or statute, but no further. If the language be uncertain or doubtful, a uniform, long-established, and unquestioned usage will be regarded by the courts in determining the mode in which powers may be exercised, and, to a reasonable extent, in determining the scope of the powers themselves; but usage can here have no room for operation, when the language of the enactment is plain, and the legislative intent is clear upon the face of it.

And Judge Dillon quotes (section 93) with approval from the decision of Chief Justice Bigelow in Hood v. Lynn, 1 Allen, 103:

Abuses of power and violations of right derive no sanction from time and custom. A casual or occasional exercise of power by one or a few towns will not constitute usage. It must not only be general, and of long continuance; but, what is more important, it must also be a custom necessary to the exercise of some corporate power, or the enjoyment of some corporate right.

Counsel for plaintiff have cited us to statutory provisions which are urged as proof that the legislative branch of the state regarded municipal corporations within Iowa as having, prior to April, 1888, power to confer franchises in the direction attempted in said Ordinance No. 129. Thus, in chapter 89, Acts 19th Gen. Assem. (approved March 15, 1882), it is provided that:

Cities organized under the general incorporation laws of the state, in addition to the powers now granted them, shall have power: * * *

Sec. 8. To require the connection from gas pipes, water pipes and sewers to the curb-lines of adjoining property to be made before the permanent improvement of the street whereon they are located, and to regulate the making of such connections on streets already improved, and to enforce such requirement as provided by law.

The argument of counsel for plaintiff, as to this statute, is, substantially, that the statutes of Iowa, up to the act of April, 1888, above referred to, were equally silent as to municipal power to grant gas and to grant electric light franchises; that the same reasoning employed by counsel for defendants which would hold that the municipality was without power to grant an electric light franchise would prove the same lack of power to grant a gas franchise; that, in this respect, gas and electric light franchises stand on the same footing; therefore whatever shall prove that cities in Iowa had, previous to April, 1888, the power to grant gas franchises, will prove as well their power, under the Iowa statutes, to grant electric light franchises. In the same connection, counsel for plaintiff refer to chapter 116, Laws 21st Gen. Assem. Iowa (approved April 9, 1886), amending chapter 89, 19th Gen. Assem., as follows:

Sec. 8. City councils of all cities organized under the general incorporation laws and special charters of Iowa, shall have power to require the connections from gas-pipes, steam-heating pipes and sewers to the curb line of adjacent property to be made before the permanent improvement of the street whereon they are located; and to regulate the making of such connections on streets already improved, and in case the owners of property on such streets shall fail to make such connections within the time fixed by such council, they may cause such connections to be made and to assess against the property in front of which such connections are made, the cost and expense thereof.

It will be noticed that "steam-heating pipes" are included in the statute just quoted. So far as appears, this is the first statutory

recognition in Iowa of steam-heating pipes laid in the streets of cities. And the logical application of defendants' argument would place the steam-heating plants in the different Iowa cities in the same position with gas and electric plants, viz. that the authority —prior to April, 1888—from the city council to lay these pipes in the streets, or erect poles and string wires thereon, is but a municipal license, revocable at the pleasure of the council. Counsel for plaintiff also refer to chapters 1 and 16 of the Laws of the 22d General Assembly of Iowa. These chapters were enacted at the same session with the chapter approved April 9, 1888, above referred to, wherein express power is given cities to establish and maintain gas and electric plants. Chapter 1 was approved the same day (April 9th), while chapter 16 was approved April 10th,— the day following. Chapter 1 relates to and creates a "board of public works" for cities of the first class (being cities of over 15,000 inhabitants), while chapter 16 grants additional powers to cities of the first class, and cities of the second class having over 7,000 inhabitants. The provisions of neither of these chapters apply to the city of Newton. But the chapters may be of value in ascertaining the legislative construction of existing general statutes (applying equally to cities of the first and second classes) with reference to the power of cities in Iowa to grant authority to lay gas pipes or place electric light poles and wires in the streets. By chapter 1 the board of public works is required (section 6) "to advertise for bids and make contracts for the lighting of the streets," etc.; (section 9) "to take especial charge of the construction, repairing and superintendence of all streets, alleys, * * * lamps and light for lighting the streets, alleys, * * * and public buildings of such cities"; (section 16) "to superintend the laying of all water, gas and steam-heating mains and all connections therefor, and laying of telephone, telegraph * * * and electric wires in the manner provided by the ordinances of such city." Chapter 16 enacts that the cities therein named, "in addition to powers now granted, shall have further and additional powers, * * * to regulate telegraph, * * * electric light * * * and other electric wires, and provide the manner in which, and places where, the same shall be placed, upon, along or under the streets and alleys of such city; to regulate the price of gas, electric light * * * rates; to fix charges for making gas, electric light * * * connections," etc. Counsel for defendants contend that these chapters can easily be construed as supplementing chapter 11. But the difficulty is that if this view is taken, and these chapters (1 and 16) be held merely to supplement chapter 11, and not to apply to gas, electric, and steam-heating plants occupying or using the streets under authority granted prior to the enactment of said chapter 11, no statutory provisions exist which authorize Iowa cities to exercise such powers with regard to said previously authorized plants. It can scarcely be assumed that the legislative branch of the state intended to thus limit the exercise of these regulating powers by the cities to whom they are granted, while, if we assume that the intention was to empower cities to exercise such powers

towards previously as well as subsequently authorized plants, there is involved a legislative recognition of such previously authorized plants.

Turning now to the judicial branch of the state, counsel for plaintiff refer us to decisions of the Iowa supreme court which are claimed to construe the powers held previous to 1888 by cities with regard to granting franchises to gas companies. Des Moines Gas Co. v. City of Des Moines, 44 Iowa, 505, was decided in 1876. The defendant city had by ordinance in 1864 granted to plaintiff gas company "the exclusive privilege of laying pipes for the conveyance of gas in all the streets and alleys in the city" for the term of fifteen years, the plaintiff to furnish defendant gas, as might be ordered by the city council, for $3 per 1,000 feet. In 1875 the city council was considering, and about to pass, an ordinance repealing said former ordinance, and contracting with others than plaintiff to supply the city with gas. An injunction was sought to restrain the city council from passing the last-named ordinance. The question before the court is declared (page 508) to be "whether the courts have jurisdiction or power to restrain by injunction, under the circumstances above stated, the passage of the proposed ordinance." The supreme court quote, as the sections under which the council passed its original ordinance granting to plaintiff company authority to lay its pipes in the streets of the city, sections 464 and 482, Code above copied. The court then say:

> It will be readily seen the city had ample power to pass the ordinance under which plaintiff claims, and that it was a proper exercise of corporate authority, unless the grant of the exclusive privilege therein contained rendered it void, and that it now has the requisite authority to pass the ordinance sought to be enjoined, unless prohibited from so doing by reason of the existence of the former.

The decision of the court, denying the plaintiff's right to injunction, is based on other grounds, viz. that a court of equity may not enjoin and restrain the city council from passing the second ordinance, since such court may not interfere with the legislative rights of such council. Yet at the very threshhold of the discussion leading to the decision the supreme court, in the words above quoted, recognize the power of the council to pass an ordinance granting the use of the streets by the gas company for laying its mains, erecting its lamp-posts, etc. Counsel for defendants insist that the argument thus drawn does not apply to electric light plants, even if it be held applicable to gas plants, since the latter plant is no substantial obstruction to the free use of the streets, while the poles and wires of the former are a continuing obstruction, affecting the public and abutting property owners. This difference is simply one of degree, and, in my opinion, does not lessen or affect the power of the city to grant the authority. Assuming the fact stated by counsel for plaintiff, and not denied by counsel for defendants, and of which the court, perhaps, might take judicial notice, viz. that prior to the act of April 9, 1888, expressly giving power to city councils to grant authority for use of streets by gas, etc., plants, many gas plants had, under city ordinances purporting to grant such au-

thority, been built, and millions of dollars invested in plants and mains, in Iowa cities, it may well be held that the Iowa statutes relating to legislative delegation of power to cities have received such legislative and judicial construction as to justify the declaration that such city councils had, prior to 1888, power to grant franchises to gas and electric light plants to use the streets in the construction and operation of such plants. This finding renders unnecessary any consideration of the point (urged by counsel for plaintiff, but on which the authorities differ) that such an ordinance could be sustained under the statutes relating to the police powers of the cities.

I do not deem it necessary, at the present hearing of application for temporary injunction, to determine whether the franchise granted plaintiff in Ordinance No. 129 is "permanent and perpetual," as expressed therein. This point may well be reserved until its decision becomes material to the case. But counsel for defendants insist that the ordinance is void, as being beyond the power of the city council, because it purports to be a perpetual and permanent grant. The ordinance does not purport to convey an exclusive franchise. The council may, without violation of the terms of the ordinance, grant like authority to as many other electric light plants as it may desire. It is not vulnerable, therefore, to the arguments so forcibly presented, in the numerous authorities cited, against the validity of ordinances wherein the grant is declared by its terms to be exclusive. Assuming, but not deciding, that the city council had no authority to grant a "permanent and perpetual" franchise, as in Ordinance No. 129 attempted, is the ordinance invalid because it contains a section wherein such grant is declared perpetual? No attempt is made in said ordinance to enter into perpetual contract with the city for lighting its streets, etc. It may be assumed that such contract would be invalid. The ordinance, as to time limit, only declares that Vaughn and assigns shall have "permanent and perpetual" right to use the streets of the city so far as necessary and proper for construction and operation of its plant. No constitutional or statutory provision of this state bearing on the point under consideration is called to our notice. No decision of the supreme court of Iowa is cited as directly in point. The validity or invalidity of the ordinance as to this point is largely, if not entirely, a matter of local law. We may, perhaps, derive assistance from some of the cases cited. In Des Moines Gas Co. v. City of Des Moines, 44 Iowa, 505, the court expressly decline to determine whether, as claimed by defendant's counsel, the ordinance granting franchise to the gas company was void because of the exclusive privilege therein granted. In Des Moines St. R. Co. v. Des Moines B. G. St. Ry. Co., 73 Iowa, 513, 33 N. W. 610, and 35 N. W. 602, the court had under consideration an ordinance wherein, having granted authority to plaintiff to lay its tracks in the streets, etc., the ordinance further provided, "The right herein granted to said company shall be exclusive for thirty years." which provision the court declare (page 517, 73 Iowa, and page 612, 33 N. W.) is the same as if it read, "The right herein granted to said company to operate said

railway shall be exclusive of other street railways," etc. Having considered the impossibility of foreseeing the future growth and wants of a city, and of predicting the same with reasonable approximation, except for a limited time, the court declare (page 520, 73 Iowa, and page 613, 33 N. W.):

From this we are inclined to think it follows that an ordinance providing for an exclusive right in perpetuity, however necessary it might be to contract for the service involved in the exercise of the right, would be unreasonable, and might be declared void.

The conclusion reached by the court is announced (page 521, 73 Iowa, and page 614, 33 N. W.):

Our holding is that under our statute, which empowers cities to authorize or forbid the laying down of a street-railway track, a city council may make a reasonable provision by contract for present and future street-railway service, and may secure the company contracted with against the impairment of its profits for a limited time, if a larger and better or more immediate service can be thus obtained.

Grant v. City of Davenport, 36 Iowa, 396, was a case wherein certain taxpayers of said city sought to restrain the city from carrying into effect a city ordinance which, among other provisions, purported to give a water company the exclusive right for 25 years, and thereafter an equal right with all others, of supplying the citizens of said city with water. There appears no limitation as to time. With reference to the objection urged against the validity of the ordinance, that it granted exclusive rights, the court declare (page 406):

If any other person or company shall hereafter claim the right to lay down water pipes in the streets, he or it may then contest the validity of the exclusive privilege to do so, granted by the ordinance to this water company. Until such a controversy arises, it is neither necessary nor proper for us to decide it.

Dodge v. City of Council Bluffs, 57 Iowa, 560, 10 N. W. 886, was heard on demurrer to the bill. Plaintiffs were taxpayers of said city, and sought to restrain the city from carrying into effect an ordinance which was claimed to be void because, among other reasons, it granted "the exclusive privilege of laying pipes under the streets and alleys of the city, and of supplying the city and its inhabitants with water for fire protection, for manufacturing purposes and domestic use," to a water company, and bound the city for payment of money as water rental. It will be noticed that this ordinance purports to grant an exclusive right without limitation as to time. With reference to the claim that the ordinance was void because granting exclusive rights, the court say (page 566, 57 Iowa, and page 888, 10 N. W.):

The ordinance purports to grant an exclusive right. Whether it was competent for the city to grant such right, we need not determine. If we should conclude it was not, it is manifest that the ordinance would not be void. It would result merely that the right granted is not exclusive, and plaintiffs, as mere taxpayers, cannot raise that question.

In City of Waterloo v. Waterloo Street Ry. Co., 71 Iowa, 193, 32 N. W. 329, the ordinance granted the railway company the exclusive right, for 30 years, to lay its tracks over the streets of the

city. After defendant had begun the operation of its railway, it began to lay its track in Jefferson street, whereupon the city council passed an ordinance repealing the original ordinance, and re-granting, by ordinance, the right to defendant for its railway on the streets already occupied by it. The city now sought to enjoin the railway from continuing to lay its track in Jefferson street. The court say (page 195, 71 Iowa, and page 330, 32 N. W.):

Counsel contend, however, that the grant was invalid, for the reason that the city had no power to give the defendants an exclusive privilege to use the street. But, if these premises were conceded, it would follow only that the city, notwithstanding the grant to defendant, might lawfully confer the same privileges upon others, and not that the grant of the privilege to it did not confer upon it the right to use the street for the purpose intended.

The general rule applicable to statutes and ordinances is not disputed, to the effect that if a part thereof is void the remainder is void if such remainder is so connected with the void part as not to be capable of separation therefrom, and of standing by itself as valid. As was said in Santo v. State, 2 Iowa, 165, 205:

An act void in part is not necessarily void for the whole. If sufficient remains to effect its object, without the aid of the invalid portion, the latter only shall be rejected, and the former shall stand.

In the same case Chief Justice Wright, in his dissenting opinion, says (page 224) with reference to constitutional provisions being upheld where a part of the statute is declared unconstitutional:

But not so where the void provisions are vital to the execution of such as are unconstitutional.

Cooley, Const. Lim. (4th Ed.) 215. quoted approvingly in Drady v. Railway Co., 57 Iowa, 393, 407, 10 N. W. 754, 761, states:

Where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may be even contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall.

In Poindexter v. Greenhow, 114 U. S. 270, 304, 5 Sup. Ct. 903, 962, the court announce that:

It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another declared inoperative and void because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see and declare that the intention of the legislature was that the part pronounced valid should be enforceable, even though the other part should fail.

In Presser v. Illinois, 116 U. S. 252, 263, 6 Sup. Ct. 580, 583, the court say:

For it is a settled rule "that statutes that are constitutional in part only will be upheld so far as they are not in conflict with the constitution, provided the allowed and prohibited parts are separable."

And see Unity v. Burrage, 103 U. S. 457.

If that section of Ordinance No. 129 which declares the authority therein granted is "permanent and perpetual" be held void, yet the remainder of the ordinance is not thereby rendered invalid.

The further objection is urged by counsel for defendants that the ordinance does not purport to grant to Vaughn and his assigns the use of the streets for public purposes, and that the city council is without power to authorize a continuing use of the streets for private purposes. There can be no difference of opinion as to the latter branch of the objection, under the holdings of the supreme court of Iowa. Heath v. Railway Co., 61 Iowa, 11, 18, 15 N. W. 573. But the ordinance in question does not expressly purport to grant authority to use the streets of the city for mere private purposes. While the cases are not uniform in their holdings, the great weight of authority seems to sustain the position that the furnishing of light to citizens generally is a sufficient public use to sustain the grant of the right to use the streets for operation of the plant furnishing such light. It is, however, contended by defendants that we are restricted to the ordinance itself, in determining whether the grant therein is for public or private use, and that since the bill discloses that at the passage of the ordinance the city was lighted under contract then in force with another electric light company, so that thereby such public use under ordinance is negatived, the silence of the ordinance as to public lighting, under the strict construction applicable thereto, compels the holding that the grant therein is for private use, and the grant therefore invalid. I must decline to accept this reasoning. Prima facie, a court must accept a statute or ordinance as properly enacted and authorized. If the ordinance is capable of two constructions, one of which upholds while the other overthrows its validity, the court must accept that which upholds. At least that much is due from the judicial to the legislative branch, be the latter the state or city legislative body. So here. If the ordinance itself does not disclose whether the use of the streets is for public or private purposes, and if the use therein granted may be for either of these purposes, the ordinance being valid in the one case and invalid in the other, the court may not assume that the council did what it had no authority to do, and enacted a void ordinance. The court will assume the contrary. In so doing, and awaiting evidence as to the fact of such use, the court is not violating any rule of evidence which forbids the receipt of oral testimony to alter or modify a written contract. The bill avers that the electric light company is supplying the citizens with lighting, and that within a year from the passage of said ordinance, and continuously since it has been thus engaged. The poles and wires of the electric light company may be for public use, even though not transmitting electricity for lighting of the streets and public places of the city, but merely for lighting houses and stores of the citizens. In City of St. Louis v. W. U. Tel. Co., 149 U. S. 465, 471, 13 Sup. Ct. 990, 992, the supreme court cite approvingly the decisions holding that the use of the streets for telephone poles is not a private use, and declare that "telegraph poles stand on the same footing." Not deciding this point, however, as to the use of the streets by the electric light company under said ordinance, I leave this question for consideration in the further progress of this case.

Counsel for defendant contend that Ordinance No. 129 is repealed by the subsequent Ordinance No. 211. If the former ordinance granted permission only—a mere license—to use the streets, the right of the city to repeal the ordinance must be sustained, under the holdings of the supreme court of Iowa. City of Burlington v. Burlington St. Ry. Co., 49 Iowa, 144; Emerson v. Babcock, 66 Iowa, 258, 23 N. W. 656; Town of Spencer v. Andrew, 82 Iowa, 14, 47 N. W. 1007. Whether such right, when it exists, can be exercised in the manner attempted by Ordinance No. 211, it is not necessary now to determine. This last-named ordinance announces no reasons for such repeal, and no good reasons are shown why such repeal, effecting such serious injury to, and substantially destroying, plaintiff's security, is necessary or proper. The controlling motives which caused its enactment are only left to be inferred from the allegations of the bill. We may not deny to the city whatever supervision and control belong to it in the complete and legitimate exercise of its police powers. It is not necessary at this time to attempt to define the extent of such supervision and control. But the words of the supreme court of Iowa in City of Burlington v. Burlington St. Ry. Co., supra, are pertinent to the case, as thus far presented: "This police authority is not a despotic power that may be exercised without a sufficient public purpose." Having arrived at the conclusion that the city had the power to grant the authority conferred in Ordinance No. 129 to use its streets, this necessitates the holding that such ordinance granted more than a mere license for said use.

It will be noticed that the city inserted in Ordinance No. 129 no reservation or right to change or repeal that ordinance. And counsel cite us to no constitutional or statutory provision authorizing the city council thus materially to change or repeal such ordinance, where the ordinance has not reserved to the city such right, while the cases in Iowa and elsewhere are numerous which declare the rule to be adverse to the power of the city to thus materially change or modify in the absence of any such reserved right.

That the general assembly of Iowa have the right to amend, abridge, or repeal the franchise granted in Ordinance No. 129, under the sweeping provisions of section 1090, Code Iowa, is conceded by counsel for the plaintiff. But that body has not exercised that right, nor attempted, if such were possible, the delegation of that right to the defendant city. Whether even the legislative branch of the state could so abridge or repeal such franchise as seriously to impair or destroy the security held by plaintiff need not now be considered. Having arrived at the conclusion that said Ordinance No. 129 conferred a valid franchise, I find it unnecessary to determine whether what is claimed to be subsequent ratification by the city could have any effect in validating such ordinance, if originally invalid.

The importance of the questions submitted has seemed to justify this lengthy consideration given them. The conclusions reached readily affect numerous franchises in Iowa whose investments reach into millions of dollars. I greatly regret that the necessity

for speedy determination of the pending application, and the press of other official duties, have prevented a clearer and more satisfactory presentation of the reasons impelling me to the conclusions reached. Counsel upon either side have favored the court, in oral argument and briefs, with a full and able presentation of reasoning and authority. All the cases cited have been examined. The present hearing is simply to determine whether there exists such necessity as to induce and justify the restraining powers of this court pending the hearing of the case. On the one hand, no substantial injury can be done to the defendant city or its citizens if attempted enforcement of the repealing ordinance be stayed during such hearing, while, on the other hand, if the repealing ordinance be enforced, and the poles and wires of the defendant electric company be removed from its streets by the city, as by said ordinance directed, not only will the business of such company be most seriously interrupted pending such hearing, and plaintiff's security disastrously affected, but, if the final decree be for plaintiff herein, such decree would find such irreparable injury to have occurred to the electric plant as that, in effect, the decree would become inoperative. Under the circumstances, had my mind arrived with less positiveness —even with some hesitation—at the general conclusion reached, the circumstances might have induced me to grant the temporary injunction. Let a temporary writ of injunction issue as prayed in petition, upon plaintiff filing due bond, in the penal sum of $2,000, with sureties to the approval of the clerk of this court. To all of which the defendants severally except.