## DRADY v. THE D. M. & FT. D. R. Co.

1. **Railroads**: CONSTRUCTION OF SIDE TRACKS OVER STREETS. Where a railroad duly authorized by an ordinance of a city, and also by virtue of section 1321, Revision, constructed its track along a certain street, it was held that the successor in interest of said company had no right, after section 464 of the Code took effect, to construct switches or side tracks on said street without making compensation to the abutting lot owners for injuries resulting therefrom.

2. ———: CONSTITUTIONAL LAW. Where a part of a statute is unconstitutional, that fact does not authorize the court to declare the remainder void, if the provisions are distinct and separable. Even if the defendant in this case could not be denied the right to construct the switch in question, yet it can be done only upon making compensation therefor.

3. ———: COMPENSATION: TRESPASS. The compensation provided by section 464, Code, as amended, cannot be limited to damages for change of grade, but it includes all legitimate damages, and where the occupation of the street was unlawful, a party, if injured thereby, may mantain an action for the trespass before the permanent damages are assessed.

*Appeal from Polk Circuit Court.*

TUESDAY, DECEMBER 13.

THE plaintiff claims of the defendant one thousand dollars

damages, and as a ground for such claim, in substance alleges that during the year 1878 the defendant, without the consent and against the wishes of plaintiff, and without having instituted any condemnation proceedings, and without having assessed or paid the plaintiff the damage which he sustained, laid down and commenced to operate a branch line or switch, commencing at a point near the southwest corner of plaintiff's lot, which is a corner lot, situated upon Vine and Fifth streets, and extending eastward to the corner of plaintiff's lot, at the intersection of Vine and Fifth streets, and thence in a northeast direction along Vine and Fifth streets, over the lots across the street east of plaintiff's lot. The plaintiff alleges that he. resides on said lot, and has been, by reason of the switch in question, deprived of access to his lot, and damaged by the stopping of freight trains on said switch, and by the smoke, dust, cinders, debris, and the smell arising from trains loaded with cattle and hogs. The answer is, in substance, as follows:

1. That on the 21st of October, 1865, the city of Des Moines, then owning the fee in its streets, and being duly authorized by law so to do, granted to the Des Moines Valley Railr. ad Company, for the operation of a line of railway from the city of Keokuk through and beyond the city of Des Moines, a right of way, by ordinance duly passed, to construct its railroad over and across Market street, with the right to lay down a double or single track, with side tracks, turn-outs and switches on the same, and to run such locomotives and trains across and over the same as might be necessary in the operation of said railroad, at such reasonable rates of speed as might from time to time be fixed by the city council; that by said ordinance terms were imposed upon the said company as to the time within which said road should be built, and providing for the acceptance of said ordinance by the railroad company, and providing that when accepted the provisions of said ordinance should become a binding contract between the city of Des Moines and the railroad company; that said com-

pany accepted the provisions of this ordinance, and it became a contract between the said parties; that by virtue of certain foreclosure proceedings the defendant in this action succeeded to all the rights, privileges, franchises, and incidents belonging or appertaining to the Des Moines Valley Railroad C mpany, and that the city of Des Moines has duly recognized the defendant company as the successors of the Des Moines Valley Railroad Company.

That the track complained of is situated in Market street, and is laid pursuant to the right and privilege granted by the said ordinance, and that said track is only a switch, made necessary in the operation of said railroad on Market street, by virtue of the rights granted by said ordinance, and that the laying of said switch or side track was essential to the maintenance and operation of said line of railroad upon Market street, and that defendant is under obligation to operate and maintain its said line of railway upon the said street, by virtue of said ordinance; that the said side track or switch was properly located and constructed, and is operated under the provisions of said ordinance, and with due care and without negligence.

2. That in the year 1868 the Des Moines Valley Railroad Company, duly organized for the construction and operation of a line of railway from the city of Keokuk to the town of Fort Dodge, by virtue, and in the assumption and exercise of the authority there given, and the power then conferred by the statutes of Iowa, constructed its line of railway over and upon Market street in the city of Des Moines, adjoining plaintiff's property, and, by virtue thereof, acquired the right to maintain over said street, in connection with its main line of railway, such side tracks, switches and turn-outs, as became necessary thereafter in the use, maintenance and operation of its said line of railway; that by virtue of foreclosure proceedings the defendant has become invested with all the rights and privileges of the Des Moines Valley Railroad Company; that in.

the exercise of such privileges, and without negligence, it constructed and operated a switch in connection with its main line of railroad, said construction and operation being necessary to the maintenance and operation of its main line of railway, the switch so constructed being the one complained of in plaintiff's petition. Defendant denies that it has been guilty of any negligence in the construction, maintenance and operation of said switch.

3. Defendant denies that plaintiff is, in any way, damaged by the laying of said switch complained of, but avers that the city of Des Moines is, and was at the dates mentioned in the petition, the owner of said street in fee, having control over the same, and that by virtue of the authority duly given by said city, as well as by the laws of the State of Iowa, the main line of railway now owned by defendant was located on and constructed over said Market street during the year 1868; and that the laying of said switch, and the operation of the same, as a part of its line of railway, in no wise inflicts any additional injury upon plaintiff's property, and gives the plaintiff no right of action for damages, said switch having been properly constructed and operated, without negligence by defendant; and defendant further avers that the construction of said switch was a necessity to the operation of said main line of railway.

4. Defendant avers that no part of its switch is laid upon plaintiff's premises, nor is the grade in front of plaintiff's property changed by reason thereof; but the grade remains the same as it was before said switch was laid, and that said switch is properly constructed upon ground over which the defendant has, and had, the right of way at the time of the construction of the switch, and is operated and maintained in a prudent and careful manner, and without negligence on the part of the defendant. Wherefore, defendant says, plaintiff suffered no damage for which the law affords a right of action against defendant.

5. The fifth count is not involved in this appeal, and hence is not set out.

6. That prior to the 22d of March, 1858, the Keokuk, Ft. Des Moines & Minnesota Railroad Company was a body corporate, having for its object the construction and operation of a railway from the city of Keokuk, northwestward along the valley of the Des Moines river, through the then town of Ft. Des Moines, now city of Des Moines, and northward toward the Minnesota line, and had, at that date, constructed only a small portion of its contemplated line of railway, extending only a short distance up the Des Moines river. That on the 22d day of March, 1858, the legislature of the State of Iowa passed an act, which took effect April 7, 1858, by which there was granted to the said Keokuk, Ft. Des Moines & Minnesota Railroad Company, for the purpose of aiding in the construction of a railroad from the city of Keokuk, up and along the valley of the Des Moines river, by way of the town of Ft. Des Moines, to the northern line of the State, certain large bodies of land hitherto granted to the Territory of Iowa, to aid in the improvement of the Des Moines river. That by the terms of said act the said railway company were required to pay certain large outstanding liabilities of the Des Moines River Improvement Company, and also certain liabilities existing against the State of Iowa, and were required to complete their said road to and through the town of Ft. Des Moines within a limited time, a certain portion of said grant of lands being expressly reserved to aid in the construction of said road from the city of Des Moines northward, and another portion to be applied in the construction of said road to the said city. That for the purpose of accomplishing the object in view by the State of Iowa, which was to secure the early construction and completion of the said line of railway up the valley of the Des Moines river, giving to the city of Des Moines the full benefit of said line of railway, by requiring the construction of the said line of railway to and through the said city northward, it became

and was, necessary, and was the duty of the said railway company, under the legislation aforesaid, in view of the location of the said town of Ft. Des Moines, and the situation of the surrounding country, to run through the said city, and over some of the streets thereof. That before actually locating its line through the said city, in deference to the control legitimately exercised by said city of Des Moines over its streets, the said railroad company, subsequently known as the Des Moines Valley Railroad Company but being the same corporation, asked of the city council of said city that it designate the streets over which the said company should pass in the construction of its line of road to and through said city. That pursuant thereto, the ordinance referred to in the first count of defendant's answer herein was passed by the said city council, and became, by the acceptance of the terms thereof by the said Des Moines Valley Railroad Company, a contract between the said city of Des Moines and said railroad company. And defendant avers that by the proceedings, as set forth in count number one of this answer, it succeeded to all the rights and immunities of the Des Moines Valley Railroad Company and became bound by all the obligations resting upon said Keokuk, Ft. Des Moines & Minnesota Railroad Company, respecting the maintenance and operation of said line of railway, in so far as it succeeded to the ownership thereof, that is to say, from the city of Des Moines to the city of Ft. Dodge, and that this defendant is now the owner of and succeeded to the land grant made to the said Keokuk, Des Moines & Minnesota Railroad Company, and is bound by the requirements of said act of the legislature of the State of Iowa respecting the maintenance and operation of the said line of railway as to that portion of said line of which this defendant became the owner.

That in the maintenance and operation of said line of railway, and in the discharge of its obligations arising under and by virtue of said act of the legislature, and in the discharge

of its obligations as a common carrier, imposed upon it by law so long as it shall maintain and operate a railway, it became and was necessary for this defendant to enlarge the facilities of said line by the laying of the switch complained of in plaintiff's petition; that in the laying of said switch this defendant conformed strictly to the grades of said city of Des Moines, and constructed said switch in a proper, careful, and prudent manner, and in the operation thereof has been guilty of no negligence or want of care, and that whatever damage plaintiff has suffered has been merely such as is necessarily incident to the maintenance and operation of a railway over said street.

7. Defendant avers that the only damages suffered by plaintiff, if any have been suffered by him, are such damages as are necessarily incident to the prudent construction, maintenance and operation of the railway track complained of, and the running of cars thereon, and that defendants have been guilty of no negligence in the construction, maintenance, or operation of said track, and that the grade of the street was not changed, and that the fee of said street is, and always has been, in said city of Des Moines.

Defendant further alleges, that whatever damages plaintiff may have sustained by reason of the matters and things set out in the petition yet he cannot recover of the defendant in this action he having failed to take any steps to have his damages assessed or appraised as provided by law, and the remedy, if any plaintiff has, is by having whatever damage he may have sustained assessed according to the statutes of the State relative to proceedings for condemnation for right of way.

The city ordinance referred to in the answer, and which is to be considered a part thereof, is as follows:

" SECTION 1. Be it ordained by the City Council of the City of Des Moines that the right of way be and the same is hereby, granted to the Des Moines Valley Railroad Company

through the city of Des Moines, over and across Market street, and such other streets and alleys east and west of Market as may be necessary to run through the city, with the right to lay down a double or single track, with side-tracks, turn-outs, and switches on the same, and. to run such locomotives and trains of cars over the same as may be necessary in the operation of said road, and at such reasonable rates of speed as may from time to time be fixed by the said city council of Des Moines; provided, however, that said right of way shall not be exclusive, and the city hereby reserves to itself the right to grant to any other railroad company the right to pass over and across said streets and alleys with its tracks; and provided said railroad company shall build their said road on the grade of the city, or on such grades as may be agreed upon; and provided further, that the right of way over Market street, on the west side of the Des Moines river, is upon the condition that said railroad shall be built through said city within five years from the first day of January, A. D. 1865.

"Sec. 2.  Be it further ordained that the right to build and operate a railroad bridge on Market street, over and across the Des Moines river, in the city of Des Moines, is hereby granted to the Des Moines Valley Railroad Company; provided said railroad company shall build, or cause to be built, a railroad bridge across said river within five years from the first of January, 1865.

"Sec. 3.  And it is hereby understood that the grants made in the first section are upon the condition and consideration that the said railroad shall be built and running into the city of Des Moines on the 31st day of December, A. D. 1866, and it being further understood that said city only grants such rights in so far as it has the power to grant the same.

"Sec 4.  Be it further ordained that this ordinance shall operate as a contract between the city of Des Moines and said Des Moines Valley Railroad Company, upon the grants herein made being accepted by the said railroad company, which ac-

ceptance shall be entered upon the records of the city council.

"*October 21, 1865.*"

The plaintiff demurred to the various counts of the answer as follows:

"Plaintiff demurrs to the first count, because the same does not state facts sufficient to constitute a defense in this:

"1. The city of Des Moines at the time of the adoption of the ordinance mentioned in said count did not possess any corporate capacity to pass the same, nor did the city acquire such right until after the Code of 1873 took effect and became operative.

"2. Said count does not state or show that the city has taken any action or granted defendants any rights or privileges since the original grant, or since the Code of 1873 became a law.

"3. The original grant of the city, as set forth in said first count of defendant's answer, would not and does not, authorize the defendant to occupy any portion of the street with its tracks, not occupied at the date of the taking effect of the Code of 1873, to-wit, the 1st day of September, 1873.

"4. The said count admits the laying down of the track as stated in plaintiff's petition, and that the same has been so done since the 1st of January, 1877, and the same fails to show that defendant has taken any steps required to be taken under the laws of the State of Iowa prior to the laying down of a railroad track upon the streets of a city, and has wholly failed to take the steps necessary to acquire a right of way for said track, in accordance with the provisions of section 464 of title 4, of the Code of Iowa, and chapter 4, title 10, of the Code of 1873.

"Plaintiff demurs to the second count of said answer for the same reasons herein before stated, and also for the further reasons as follows:

"The law under which defendant claims to have acted in

laying down the said track was repealed by the adoption of the Code of 1873, and since that time section 464, above cited, has been the only law under, or by virtue of which, the defendant had authority to make additions to, or lay down new tracks within the limits of the city of Des Moines. There has been no law in force in the State of Iowa since the 1st of September, 1873, allowing or giving the defendant the right to lay down a new track upon the streets of the city of Des Moines, without first proceeding to obtain the right of way and paying the damage to abutting property as provided in the sections and chapters of the statute herein before cited.

"Plaintiff demurs to the third count of the defendant's answer for all of the reasons herein before assigned, and also for the further reason that the same simply pleads legal conclusions. The main fact that the switch mentioned may have been, and still is, a necessity, constitutes no ground for the destruction of plaintiff's property without just compensation therefor.

"Plaintiff demurs to the fourth count of the defendant's answer for all the reasons herein before stated. The mere fact that the grade of the street remains unchanged constitutes no defense to the plaintiff's cause of action, the suit being for the damage which plaintiff has sustained in being deprived of the street, etc.

"Plaintiff demurs to the sixth and seventh counts of the defendant's answer for each and all of the causes herein before set forth, and also for the further reason that the laws therein mentioned and referred to were repealed long prior to the date of the creation or organization of defendant, and the law in force at the date thereof, and under which defendant was organized, reserves the right to place any limitation the State may elect to impose upon the franchises which any corporation might obtain or employ.

"The seventh count presents no defense in this, that defendant is a mere trespasser, and having damaged plaintiff, any

law which would deny to plaintiff a trial by jury according to the course of the common law would be unconstitutional and void."

The court sustained this demurrer. The defendant appeals.

*Nourse & Kauffman*, for the appellant.

*Sickmon & Barclay*, for the appellee.

DAY, J.—I.  It must be conceded that under the provisions of section 1321 of the Revision and the ordinance in question

1. RAIL-
ROADS: con-
struction of
side-tracks
over streets.
the Des Moines Valley Railway Company acquired the right to lay its track upon Market street, and that under the decisions of this State the proprietor of abutting property could not recover damages if the track was constructed and operated in a proper manner.     See *Milburn v. The City of Cedar Rapids*, 12 Iowa, 246; *Slatten v. Des Moines Valley Railroad Co.*, 29 Id., 152; *City of Davenport v. Stevenson*, 34 Id., 225; *City of Clinton v. Railroad Co.*, 37 Id., 61; *Ingram et al. v. C., D. & M. Railroad Co.*, 38 Id., 669; *Cadle v. Muscatine Western Railroad Co.*, 44 Id., 13; *Burr v. City of Oskaloosa*, 45 Id., 275; *Davis v. Chicago & N. W. Railway Co.*, 46 Id., 389; *The State v. Davenport & St. Paul Railway Co.*, 47 Id., 507.     Before the switch in question was constructed, however, the following changes in the law had been made: Section 1321 of the Revision had been amended by chapter 47, acts of Fifteenth General Assembly, so as to read as follows:  "Any such corporation may raise or lower any turnpike, plank-road, or other highway, for the purpose of having its railway cross over or under the same, and in such cases said corporation shall put such turnpike, plank-road or other way, as soon as may be, in as good repair and condition as before such alteration at such place of crossing."   Section 464 of the Code, as amended by chapter 6 of the laws of the Fifteenth General Assembly, respecting the powers of cities, had also been enacted, as follows:  "They

shall also have the power to authorize or forbid the location or laying down of tracks for railways and street railways on all streets, alleys, and public places, but no railway can thus be located and laid down until after the injury to property abutting upon the street, alley, or public places upon which such railway track is proposed to be located and laid down has been ascertained and compensated in the manner provided for taking private property for works of internal improvement in chapter 4 of title 10 of the Code of 1873." See Miller's Code, Sec. 464.

The principal question involved in this case is to what extent and in what manner is the defendant, which succeeded to the rights of the Des Moines Valley Railroad Company, affected by this change in the statute? It is insisted upon the part of the appellant that when the Des Moines Valley Railroad Company, under a legally conferred authority, constructed the line of its railway upon Market street, that it thereby acquired the right at any future time to construct upon that street such necessary side tracks and switches as its increasing business might demand, and that the exercise of this right cannot be restricted or controlled by any amendment of or change in the law. Appellant cites and relies upon *Cleveland & Pittsburgh Railroad Co. v. Speer*, 56 Penn. St., 326, as in its essential features like the case at bar. This case, however, is not in point upon this question as there had been no change in the general law intermediate the date of the construction of the main line and the switch complained of. The points determined were, that a charter authorizing the construction of a railroad necessarily confers the power to construct side-tracks and switches, and that for the construction of a railway over a street in a town, pursuant to provisions of the charter, the owner of an abutting lot cannot recover damages. Section 464 of the Code is in terms applicable to all railway tracks which may be constructed in the streets of a city after its passage. It applies to the defendant, we think, unless to allow it

such application would contravene some constitutional provision. In the enactment of section 1321 of the Revision, the State made no contract, either express or implied, that as to the Des Moines Valley Railroad Company or those succeeding to .ts rights, this section should remain for all time unrepealed or unamended. Citizens have no vested rights in the existing general laws of the State which can preclude their amendment or repeal, and there is no implied promise on the part of the State to protect its citizens against incidental injuries occasioned by changes in the law. Cooley's Constitutional Limitations, page 347.

There is no implied contract between a State and a corporation that there shall be no change in the laws existing at the time of the incorporation which shall render the use of the franchise more burdensome or less lucrative, any more than there is between the State and an individual that the laws existing at the time of the acquisition of property shall remain perpetually in force. *Thorpe v. The Rutland & Burlington Railroad Co.*, 27 Vt., 140; *Rodemacher v. The Milwaukee & St. Paul Railroad Co.*, 41 Iowa, 297. It is conclusively presumed that the Des Moines Valley Railroad Co. constructed its line of railway upon Market street with knowledge that the State might repeal or modify the existing law as to the manner in which any more of that street might in the future be appropriated, and that it impliedly consented that the State might do so. Neither it, nor its grantee, can justly complain that this privilege has been exercised. The company may insist that its right to the property which it has acquired shall be recognized and respected. But it cannot lawfully demand that all the provisions of the statute in force when this property was acquired shall be continued for the purpose of rendering its use more convenient and profitable.

The ordinance relied upon by defendant does, it is true, purport to constitute a contract between the city of Des Moines and the Des Moines Valley Railroad Company. But the city

of Des Moines is a mere creature of the statute and can exercise such powers only as are directly, or by necessary implication, conferred upon it. It is not competent for the city, by ordinance, to take away the general power of the Sta'e to revise or amend its statutes. In accepting the ordinance from the city the Des Moines Valley Railroad Co. is presumed to have known what limitations the law imposes upon the city's authority. There is no analogy between a right of way acquired in the street of a city under section 1321 of the Revision, and the right of way acquired in the country under proper condemnation proceedings. Where a right of way is acquired under the statute for the condemnation of private property, the railway company acquires a right to the exclusive use of the whole one hundred feet in width, and may cover it with tracks. But a right of way acquired under section 1321 of the Code must be enjoyed in connection with the public, and the railway company must put the street in as good repair as it was before any alteration which it may have made in grade. What we have said applies to the first three counts of the answer.

II. The sixth count of the answer alleges, in substance, that on the 22d day of March, 1858, the legislature of the State of Iowa passed an act granting to the Keokuk, Ft. Des Moines & Minnesota Railroad Company, subsequently known as the Des Moines Valley Railway Company, certain large bodies of land, and requiring said company to pay certain large outstanding liabilities of the Des Moines River Improvement Co., and certain other liabilities then existing against the State of Iowa, and to complete their road to and through the town of Ft. Des Moines, now city of Des Moines, within a limited time, and that in the maintenance and operation of said line of railway, and in the discharge of its obligations arising under said act of the legislature, and of its obligations as a common carrier imposed upon it by law, it became necessary to enlarge its facilities by the laying of the switch complained of.

2. ——:
constitutional
law.

Section 464 of the Code confers upon cities power to authorize or forbid the location or laying down of tracks for railways on all streets, alleys, and public places. Now it may be that the State, having by special statute, and as a condition of the enjoyment of its bounty, required the construction of, the railway in question *to and through* the city of Des Moines, cannot constitutionally authorize the city to forbid the company such use of the streets as may be necessary to the proper and successful management of its road.

It is apparent from an examination of section 464 of the Code that the legislature had two distinct objects in view, namely: *first*, to give to the cities complete control over their streets, and to impower them to forbid their occupation by lines of railway; *second*, to provide that the streets could be occupied by railway tracks only after compensation for the injury to abutting property. Now, if it should be conceded that the first object, as to the defendant, cannot be accomplished, this is no reason why the second object may not be attained. The law may, as to the defendant, be unconstitutional and inapplicable so far as the first object is concerned, and perfectly constitutional and applicable as to the second. In Cooley on Constitutional Limitations, fourth edition, page 215, it is said: "Where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall." If it should even be conceded that, under the facts alleged in the sixth count, the defendant cannot be denied the right to construct the switch in

question, still we are clearly of opinion that it can be done only upon making compensation as provided in section 464.

III.   The fourth count alleges that no part of the switch is laid upon plaintiff's premises, and that the grade in front of plaintiff's property has not been changed.   Appel-

*——:
compensa-
tion: tres-
pass.

lant insists that section 464 of the Code requires compensation to be made only for a change in the grade of the street.   This argument is based mainly upon the fact that the section, as originally enacted, provided that the injury to abutting property should be ascertained and compensated in the manner provided for *compensation of injuries arising from re-grade of streets in section four hundred and seventy of this chapter.*   It is said, and perhaps correctly, that section 469 is the one intended by the legislature.

By chapter 6, laws of Fifteenth General Assembly, section 464 of the Code, was amended by striking out the words above indicated in italics, and substituting in lieu thereof the following words: "Taking private property for works of internal improvements, in chapter 4, of title 10, of the Code of 1873." Whatever may have been the proper construction of the section before the amendment, we are clearly of the opinion that now the compensation to be made can not be limited to damages arising from a change of grade, but that it extends to all legitimate damages arising under chapter. 4, title 10 of the Code.

IV.   The seventh count of the answer alleges that plaintiff has failed to take any steps to have the damages assessed or appraised as provided by law, and that the remedy of plaintiff, if any he have, is to have his damages assessed according to the statutes relative to proceedings for condemnation of right of way.   In *Daniels v. The Chicago & N. W. Railroad Co.,* 35 Iowa, 130, 135, it is said: "It has been quite uniformly held, and may now be regarded as the settled doctrine in this country, under statutes such as ours, that the statute furnishes the only mode of ascertaining the damages consequent upon

the taking of private property for public use." See also authorities cited in this case on page 136. The case of *Donald v. The St. L., Kansas City & N. Railroad Co.*, 52 Iowa, 411, does not militate against this rule, as in that case the question of defendant's liability was submitted to the Circuit Court, by agreement, on an agreed statement of facts, but the question as to the exclusiveness of the statutory remedy was not relied upon nor presented. A distinction, however, may very properly be recognized between the damages which have been sustained at the time of the commencement of the suit, and the permanent damages which will arise from the continued occupation and use of the right of way. The former, we think, may be recovered by action, although the latter must be assessed as provided in the statute. In *Ford v. The Chicago & N. W. Railroad Co.*, 14 Wis., 609, 617, it is said: "It seems that the past damages, or those occasioned by the trespass, might have been assessed by the court (*William v. Railroad Co.*, 16 N. Y., 97); or the judge might perhaps have ordered a jury for that purpose; but the permanent damages, or those which would accrue to the plaintiff by the continued use of the land by the company, can only be ascertained in the manner prescribed by the statute." It is said this doctrine is not applicable, because the plaintiff does not own any part of the street, and no trespass was committed upon his property. But the occupation of the street without compensating the plaintiff for the damages sustained was an unlawful act, and for this unlawful act the plaintiff, if injured thereby, may recover. The matters set up in the seventh count were not pleaded as a partial, but as a complete, defense.

It follows that the demurrer, as to all the counts of the answer, was properly sustained.

AFFIRMED.