LOUIS ANHALT, Plaintiff, Appellant, v. THE WATERLOO, CEDAR FALLS & NORTHERN RAILWAY Co., Defendant, Appellee.

Interurban railways: USE OF CITY STREETS: COMPENSATION TO ABUTTING OWNERS. There is a recognized distinction between the terms railways and street railways as used in the statutes. The former, termed commercial railways, embraces all railroads doing a general freight and passenger business between different cities and towns, while the latter are permitted to occupy the streets of a city for the purpose of carrying passengers with ordinary baggage from one point to another within the city; and a city has no power to grant an interurban railway the right to use its streets for the ordinary business of a commercial railway, aside from the carrying of passengers, without compensation to the abutting property owners along portions of the streets so used.

*Appeal from Bremer District Court.*—HONS. J. F. CLYDE and C. H. KELLEY, Judges.

TUESDAY, JUNE 23, 1914.

ACTION by abutting property owner to recover damages from an interurban railway company occasioned to his property by the use of the street by said company for purposes other than that of a street railway. Plaintiff appeals.— *Reversed.*

*Sager & Sweet,* for appellant.

*Hagemann & Farwell,* for appellee.

GAYNOR, J.—Plaintiff in his petition states: That he is the owner of the south half of lots 5 and 6 in block 19 in Cretzmeyer's addition to Waverly, and occupies the same as a residence. That the defendant is a corporation organized under the laws of this state, for the purpose of, and has been for a number of years last past engaged in operating an interurban railway in the counties of Bremer and Black Hawk in this state. That, as such, it maintains freight and passenger depots in Waverly, and has other stations along its lines, for the reception of freight and the accommodation of passengers. That, in the construction of its railway, it laid tracks upon and over various streets in the city of Waverly, as well as over and across certain farm land between the various towns and cities along its line. That among the streets upon and over which it located and laid its track, and has been since the laying of the track operating and maintaining an interurban railway, are Washington street, running north and south, and Ellsworth street, running east and west, in said city. That said streets meet at the corner of block 19 in the addition aforesaid. Plaintiff's property aforesaid abuts upon Washington street for a distance of sixty-six feet and

on Ellsworth street a distance of one hundred and thirty-two feet. The tracks of said railway were laid some time in the latter part of 1910, and ever since that time the same have been used for the movement, switching, and transportation of cars, freight, wares, merchandise, and live stock, to and from said city of Waverly. The tracks of defendant upon said street, at the place where plaintiff's property abuts thereon, are so close to said property as to occupy a portion of the space in the street on the west and south side of plaintiff's premises, usually and ordinarily devoted to sidewalk. That, in addition to the main line of track over which the principal portion of defendant's business is handled (which main line is located and laid down on Washington and Ellsworth streets aforesaid), the defendant owns and operates a side track which connects with the tracks of the Chicago Great Western Railway. The right of way of the said Chicago Great Western Railway adjoins the defendant's track near the southwest corner of block 19. That in switching cars from its track to the tracks of the Chicago Great Western Railway, or from the latter to its own track, it moves and transports cars of freight and live stock over and upon that portion of Washington and Ellsworth streets upon which plaintiff's property abuts. That the defendant, in the transaction of its business as an interurban railway, and in operating upon Washington and Ellsworth streets, uses not only its passenger and combination baggage car, but uses freight cars of the kind and character commonly and ordinarily used by steam railways for the transportation of freight, wares, merchandise of all kinds, including coal and live stock. That defendant's railway was located and laid upon said streets over the objection of the plaintiff and without his consent. That the injury to plaintiff's property abutting on said streets has never been ascertained and compensated for in the manner provided for the taking of private property for works of internal improvement. That plaintiff's property has been injured by

the location and laying down of defendant's track in the sum of $1,500, and for this the plaintiff asks judgment.

The defendant filed the following demurrer:

Comes now the defendant and demurs to the petition of plaintiff filed herein on the ground that said petition shows upon its face that the plaintiff is not entitled to any of the relief demanded in said petition for the following reasons:

First. It appears from the petition that the defendant is operating only an interurban railway within the limits of the city of Waverly, and upon and over the street mentioned in the petition, and there is no allegation that the defendant has not a proper franchise granted by the city of Waverly in the manner provided by law, authorizing it to construct and operate its road in the manner in which it has been constructed and operated, or that the said franchise requires it to compensate abutting property owners for the injury, if any, to their property.

Second. That under the law the city of Waverly had the absolute power to authorize the construction of the defendant's interurban railway upon, over, or along the said Washington street, and to prescribe the conditions and regulations under which the same should be constructed and operated upon said street, and that there is no allegation in the petition that the city of Waverly has not duly authorized, in the manner provided by law, the construction and operation of the road at the place in question, in the manner in which it has been constructed and operated or that there was any condition imposed by the city of Waverly requiring the defendant to compensate abutting property owners for the injury, if any, to their property.

Third. That there is no general law in the state of Iowa requiring interurban railway companies, operating upon and over streets within the limits of a city, to compensate abutting property owners for the injury, if any, to their property, and the right, if any, to abutting damages necessarily would have to be bottomed upon some provision of an ordinance, or the franchise under which the said interurban railway was constructed and is being operated, and that there is no allegation in the petition showing that said right exists and no facts shown upon which the plaintiff is entitled to recover.

The demurrer having been sustained by the court, the plaintiff filed an amendment to his petition in which he sets up the ordinance of the city of Waverly authorizing the construction, maintenance, and operation by the defendant of its railway in, upon, and along the streets of the city, and setting up also the defendant's articles of incorporation, and alleging in said amendment, among other things, the following:

That under said ordinance the defendant claims the right to move and transfer, and has moved and transported, the freight of the kinds mentioned in plaintiff's petition, and in addition thereto has moved oil, gasoline, and kerosene, all in or upon ordinary box and flat cars, in general transporting in such cars all the various kinds of freight commonly transported by steam railroads, and in the transaction of its business the defendant has moved cars containing freight, as herein stated, over and upon Washington street and Ellsworth street on the portions thereof upon which plaintiff's property abuts, and at various times has allowed the same to be and remain thereon at such place for periods of time of greater or less length, as the necessities of or convenience of its business demanded. That in the operation of its said railway, and for the convenient handling of the freight hauled by it, the defendant has constructed and maintains a freight depot at a distance of a few rods (exact distance plaintiff being unable to state) to the southeast of plaintiff's premises. Such depot is located along its tracks within the corporate limits of the city of Waverly, Iowa, and along and adjacent to the track from and to which it switches and moves the freight cars handled by it, or received from the Chicago Great Western Railway. That the switch connecting the defendant's line with the railroad last mentioned is so located that cars cannot be moved from the main track of defendant to its side track, or from the tracks of the Chicago Great Western to its own lines, without moving the same over and upon Washington and Ellsworth streets upon the portion thereof upon which plaintiff's property abuts. That the cars so used by defendant are unsightly to the same degree and extent as are like cars similarly loaded and used by steam railways. That in the switching of said cars there has been and is more or less noise from the bumping and moving of cars of such character and extent as to be carried upon and into the

dwelling house of the plaintiff. That the defendant has moved the said freight cars over the streets hereinbefore mentioned, in the manner stated, ever since the location of its line, and it continues to the present time to do so. That the use of the defendant of its tracks at the place and in the manner herein stated has caused the plaintiff and his family physical discomfort and annoyance and has prevented the comfortable enjoyment of plaintiff's dwelling, to his damage in the amount stated in his petition.

This amendment to the petition was, on motion of defendant, stricken from the file. From the action of the court in sustaining defendant's demurrer and in striking plaintiff's amended petition from the file, plaintiff duly excepted, and now appeals, and assigns the following grounds for reversal:

First. The court erred in sustaining appellee's demurrer, thereby holding that an interurban railway may use a city street for the movement of freight of all kinds in cars of the kind employed by commercial railroads without paying abutting damages to the owner of property abutting upon the portion of the street so used.

Second. The court erred in sustaining appellee's demurrer, thereby holding that an interurban railway may use a city street for the movement of all kinds of freight in cars other than its passenger and combination cars without paying abutting damages to the property owner whose lots abut upon the portion of the streets used for the movement of freight in ordinary box cars, flat cars, and stock cars.

Third. The court erred in sustaining appellee's motion to strike plaintiff's first amendment to the petition, thereby refusing to allow plaintiff to set out the franchise ordinance, under which the defendant claims the right to operate, and refusing plaintiff the right to ask for an injunction to restrain the unlawful use of the streets until his damages were ascertained and paid.

Fourth. The court erred in striking plaintiff's first amendment, thereby refusing to allow him to set up the fact that defendant allowed freight cars to be and remain in the street in front of plaintiff's property; that such cars were unsightly; that the movement thereof was attended with noises which were carried into and upon plaintiff's property; and that

the use of the streets, in the manner complained of, cause plaintiff and his family discomfort and annoyance and prevent the comfortable enjoyment of his property.

Fifth. The court erred in striking from the files plaintiff's second amendment, thereby preventing him from pleading so much of the articles of incorporation of the defendant as define its powers.

It is conceded that the city of Waverly owns the fee to the street. It is conceded that the defendant is an interurban railway.

This case presents the following question: Has a city power to grant an interurban railway the right to lay down its tracks and use its streets for the purpose of carrying on such business as is usually incidental to and carried on by commercial railways without first paying damages to the abutting property owners along the portions of the street so used?

It is conceded that, in the absence of legislative authority, a city is without power to authorize the use of its streets for railway purposes, and, if the power lies in the city now, it must be found in some legislative grant of power to it, to so do.

Prior to the act of the Legislature appearing now as section 767 of the Code of 1897 (section 464 of the Code of 1873), there was no provision of law giving right to compensation for incidental injuries to abutting property occasioned by the use of the street for railway purposes. See *Drady v. Railway Co.*, 57 Iowa, 393; *Slatten v. Railway Co.*, 29 Iowa, 148; *Milburn v. City of Cedar Rapids*, 12 Iowa, 246; *Davenport v. Stevenson*, 34 Iowa, 225. This case, however, is to be determined by the law in force at the time defendant acquired the right under which it is now operating.

Section 767 of the Code of 1897 (section 464 of the Code of 1873) provides:

Cities and towns shall have the power to authorize or forbid the construction of street railways within their limits and may define the motive power by which the cars thereon shall

be propelled; and to authorize or forbid the location and laying down of tracks for railways and street railways on all streets, alleys and public places; but no railway track can thus be located and laid down until after the injury to property abutting upon the street, alley or public place upon which such railway track is proposed to be located and laid down has been ascertained and compensated for in the manner provided with reference to taking private property for works of internal improvement.

Section 2033-a of the Supplement of the Code of 1907 provides:

Any railway operated upon the streets of a city or town by electric or other power than steam, which extends beyond the corporate limits of such city or town to another city, town or village, or any railway operated by electric or other power than steam, extending from one city, town, or village, to another city, town, or village, shall be known as an interurban railway, and shall be a work of internal improvement.

Section 2033-b provides:

The words 'railway, railway company, railway corporation, railroad, railroad company, and railroad corporation,' as used in the Code and acts of the General Assembly, now in force or hereafter enacted, are hereby declared to apply to and include all interurban railways, and all companies or corporations constructing, owning or operating such interurban street railways, and all provisions of the Code and acts of the General Assembly, now in force or hereafter enacted, affecting railways, railway companies, railway corporations, railroads, railroad companies, and railroad corporatitons, are hereby declared to affect and apply in full force and effect to all interurban railways, and to all interurban railway companies or railway corporations constructing, owning or operating such interurban railways.

Section 2033-c provides:

Any interurban railway shall within the corporate limits of any city or town, . . . upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels,

packages, and freight as it may carry in its passenger or combination baggage cars only, be deemed a street railway, and subject to the laws governing street railways.

The arguments submitted in this case have taken a wider range than we consider necessary to follow in order to reach a correct conclusion as to the rights of the parties upon the issues here tendered. The decisions of other courts, under different statutes, are not helpful to us here. We think a proper conclusion can be reached in this case through a fair consideration and proper interpretation of the statutes of this state and the decisions of this court.

The right of a city to grant to railways the use of its streets must be found in some legislative grant to it of the power to so do. A statute granting to a city authority to do a particular thing, with a limitation upon the power, must be construed so as to give effect to the limitation as well as to the power granted.

Section 767 of the Code gives to cities the power to authorize the construction of street railways within their limits, and gives them power to authorize the laying of tracks for railways and street railways upon the streets. It, however, places a limitation upon the right so granted, and says that no railway track can be located and laid down until after the injury to property, abutting upon the street, has been ascertained and compensated for.

Our court has always made a distinction between street railways and railways. The latter have been considered to be those larger institutions, and are those employed in general freight and passenger traffic from one town to another, or between one place and another, and are usually denominated commercial railways. This court, in considering the law touching railways and street railways, has always differentiated and made it plain that the word ''railway'' had reference to commercial railways, as used in the statute, and not to street railways. The chief characteristic of a street railway is that it is built upon the passes along streets and avenues for the con-

venience of those moving from place to place therein. Its fundamental purpose is to accommodate street travel, and not travel to and from points beyond city lines.

Commercial railways embrace all railroads, for general freight and passenger traffic, between one town and another, and street railways embrace all such as are constructed and operated, in the public streets, for the purpose of carrying passengers with the ordinary luggage from one point to another on the street. *Harvey v. Aurora Railroad Co.*, 174 Ill. 295 (51 N. E. 163) ; *Diebold v. Kentucky Traction Co.*, 117 Ky. 146 (77 S. W. 674, 63 L. R. A. 637, 111 Am. St. Rep. 230, 4 Ann. Cas. 445).

When interurban railways came into existence, a new condition presented itself to the Legislature, and much of the law which has been promulgated and pronounced, touching commercial railways and street railways, did not meet the new condition. These interurban railways had not only many of the characteristics of the commercial railway, but had many of the essential elements of a street railway, especially when operated within the limits of the city proper. This new condition called for additional legislation, so that these new railways might be placed within a class that would subject them to the law governing either commercial railways or street railways, or both. Thereupon the Legislature passed the law found in section 2033-a, 2033-b, and 2033-c, of the Supplement to the Code of 1907. By subdivision "b" the Legislature declared that interurban railways should be included in, and subject to, the law theretofore enacted governing commercial railways, and that all the law relating to commercial railways should apply to these interurbans, and that all the provisions of the Code and acts of the General Assemblies in force, governing commercial railways, should apply with full force and effect to interurban railways. If nothing further was said than is found in subdivision "b," it would be plain that they would be governed entirely, and in all respects, by the law governing commercial railways. However, subdivision "c" makes an

exception, and says that it shall be deemed a street railway and subject to the laws governing street railways upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels, packages, and freight as it may carry in its passenger or combination baggage cars only. That is, where it is using streets for the purpose only of transporting passengers, mail, baggage, parcels, packages, and freight such as it carries in its passenger or combination baggage cars only, then it will be deemed a street railway, otherwise a commercial railway. That is, upon all streets upon which it assumes to carry on the business of the ordinary commercial railway, it is deemed a commercial railway and subject to all the laws governing commercial railways.

Reading the law as amended by these sections referred to, as found in the Supplement of the Code of 1907, and incorporating these amendments into the provisions of the law as found in section 767 of the Code of 1897, we have the legislative intent thus expressed:

Cities and towns shall have the power to authorize or forbid the construction of street railways within their limits, and may define the motive power by which the cars thereon shall be propelled; and to authorize or forbid the location and laying down of tracks for commercial railways, interurban railways, and street railways, upon all streets, alleys and public places; but no commercial railway or interurban railway track can thus be located and laid down until after the injury to property abutting on the street  .  .  .   upon which such railway or interurban track is proposed to be located and laid, has been ascertained and compensated for in the manner provided with reference to the taking of private property for works of internal improvement.

But interurban railways shall not be liable to abutting property owners on account of the use of any street, or the laying down of tracks upon any street, as it shall use for transporting passengers, etc., only, in its passenger or combination baggage car. As to those streets, it shall be deemed a street

railway, and not subject to the laws governing commercial railways, and therefore not liable to abutting property owners for consequential damages, or for damages which arise as an incident to the use of the street for the transporting of passengers.

This provision of the law was no doubt the result of a careful consideration, by the Legislature, of the different purposes to which interurban railways might be put, and it was no doubt the thought of the Legislature that as long as these interurbans, within the city limits, transacted upon the streets only such business as was incidental to the operation of the ordinary street railway, they ought not to be held to the greater burden which attaches to the commercial railway, but that when they assumed to transact business upon the streets of the city, such as was usually and ordinarily carried on by commercial railways, then they ought to be made subject to all the laws which govern and control these commercial railways, and subject to all the burden which the law imposed upon them. It was no doubt the thought of the Legislature that street railways were for the transporting of passengers from point to point within the city, for the convenient use of the people of the city in moving from point to point, and that the burden imposed upon the street, the added servitude, ought to be borne without complaint, and without compensation, by the abutting property owners, but that where these interurbans sought the use of the streets for traffic, for carrying of freight, such as it was alleged this interurban was engaged in carrying, the added servitude was more, and the burden greater upon the street than abutting property owners ought to be required to bear. Hence, as to all streets upon which these interurbans sought to depart from the ordinary business of a street railway, and engage in the business of commercial railways upon the streets, they ought to be required to make compensation to those affected by the added burden. The use of the public streets for commercial purposes, for the hauling of freight and live stock, it was thought ought to render the company liable

for consequential damages to adjoining property, arising from this unreasonable use of the street, and the Legislature in its wisdom made the provision of the law to meet such contingencies, and therefore enacted section 2033-b, hereinbefore set out.

The Legislature, no doubt recognizing that interurbans might use a portion of the streets of the city for general freight and passenger traffic, such as is usually carried on by these larger commercial concerns, and recognizing also that it might use certain streets for the convenience of passengers within the city in moving from place to place for street travel only, made the distinction and exception found in section 2033-c.

The Legislature no doubt saw that, in the act of appropriating the street for general freight traffic, there was a palpable and permanent misappropriation of the street, or some portion of it, to the exclusive use of the corporation, and that they ought to be made liable for the consequential damages to the adjoining property.

The Legislature no doubt saw that the use of the public street by a corporation, for its own private purposes, in the running of freight trains and the carrying of promiscuous freight, placed an excessive burden upon the street, and, in some instances, devoted it almost exclusively to the use of the corporation; that it placed a new and additional burden upon the adjoining landowners which did not exist by reason of the general right to passage through the street; that it was an unreasonable use of the street; and that the adjoining property owner, therefore, ought to be entitled to consequential damages.

The Legislature, by the statute hereinbefore cited, granted to cities the right to authorize the laying of tracks upon the public streets for even commercial railways, but the right, when granted, was always subject to the condition provided in the act itself that the adjoining or abutting landowner

should be compensated for the damages resulting to him as a consequence thereof.

This right now exists in favor of interurban railways, and cities may grant to them the right to lay tracks upon public streets, subject, however, to the same conditions that attach to commercial railways, to wit, tracks cannot be located and laid, in pursuance of the authority given, until after injury to the property abutting on the street, upon which it is located, has been ascertained and compensated for. Cities may grant to interurban railway companies the right to lay their tracks and use their streets as street railways only, with-out compensation to adjoining property owners, but it cannot grant to interurban railways the right to use its streets for the purposes for which commercial railways are used, without compensation to the abutting property owners.

It has been generally held that the operation and maintenance upon the public street of street railways, for the purpose only of accommodating the public travel, by aiding in transporting persons from one place to another on the street, is not such an additional burden upon the adjoining property owner as entitles him to damages. It is not inconsistent with the burden contemplated by the original taking of the land for street purposes, and he is supposed to have been compensated in the original taking. This use for street railways is classed as an incident to the public easement, and is not deemed to be a taking of the street, or any portion of it, for any other purposes than those to which it was originally devoted. But not so with commercial railways. They were deemed to be an additional servitude, and compensation was allowed to adjoining property owners for the taking of the streets for that purpose, and these acts of the Legislature, hereinbefore referred to, are a recognition of the dual character of the interurban. It may devote the streets to such uses only as are not inconsistent with the original taking, or it may devote them to purposes which cast a greater burden upon the street, to the damage of the adjoining owner. That

is an additional servitude for which the owner of abutting property is entitled to compensation as consequential damage.

It is contended, however, that section 2033-d gives to the city a right to prescribe the conditions and regulations under which interurban railways shall be constructed and operated within city limits. We do not think, however, that this subdivision of section 2033 can be so construed as to limit the operations of section 2033-b. Section 2033-b clearly puts interurban railways under the ban of section 767 of the Code. This subdivision gives to the city the power to authorize or forbid the construction of interurban railways upon the street, and to prescribe the conditions and regulations under which they shall be constructed upon the street and operated within the limits of the city. The two sections can be construed together and work harmoniously. By incorporating subdivision ''b'' into and making it a part of section 767, we give to the abutting property owner a right to consequential damages, and subdivision ''d'' gives to the city the right to prescribe the conditions and regulations under which the railway shall be constructed on the street and operated within the limits of the city after so constructed, and these two, viewed in the light of subdivision ''b,'' show that the purpose of the Legislature was to put interurban railways in the same category with commercial railways, except as provided in subdivision ''c,'' and this must have been clearly upon the thought that the use of an interurban railway for transporting freight and general freight traffic imposes an additional servitude upon abutting property for which compensation ought to be made.

We are of the opinion that the court was in error in sustaining the demurrer to plaintiff's petition. That the plaintiff did not waive the error in filing an amendment to his petition, see *Wisner v. Nichols,* 165 Iowa, 15.

We think also that the court erred in striking plaintiff's amendment to the petition, for the reason that the same is a

fuller and completer statement of the grounds upon which the plaintiff bases his right to the relief for which he prayed. For the errors pointed out, the case is—*Reversed.*

LADD, C. J., and WEAVER and WITHROW, JJ., concur.