INTERURBAN RAILWAY COMPANY, Appellant, v. CITY OF DES MOINES et al., Appellees.

RAILROADS:  Interurban Railroads—Right to Cross Street.  An interurban railway, equally with an ordinary commercial steam railway, was authorized, under the first sentence of Sec. 2017, Code Suppl. Supp., 1915, and under Sec. 2033-b, Code Supp., 1913 (Sec. 8203, Code, 1924), to construct *across* a street, without the consent of the city or town, but under proper regulations, a spur track solely for the purpose of handling freight; said track being so constructed that it

is not in front of any property except property the owners of which have consented to the said construction. (Sec. 2017, Code Suppl. Supp., 1915, appears in the Code of 1924 as Secs. 8020 to 8023, inclusive, and Sec. 8026.)

*Appeal from Polk District Court.*—J. C. HUME, Judge.

FEBRUARY 7, 1922.

OPINION ON REHEARING JUNE 24, 1924.

SUIT in equity, to enjoin the city of Des Moines and its officers from removal of a track laid by plaintiff across one of its streets. Relief prayed was refused, and plaintiff's petition dismissed. Plaintiff appeals.—*Reversed.*

*W. H. McHenry* and *Corwin R. Bennett,* for appellant.

*William E. Miller, Henry H. Griffiths, Chauncey A. Weaver, Russell Jordan,* and *H. W. Byers,* for appellees.

ARTHUR, C. J.—I. The petition alleges the corporate capacity of plaintiff; that it is engaged in business as a common carrier, in which capacity it operates an interurban railway within the city limits, and that, in furtherance of such business, it has constructed a spur track on property lying west of Sixth Avenue across New York Avenue in the city of Des Moines; that said track was laid across the street substantially at right angles with the street, and with the consent of the property owners on both sides, and in front of which the said track crossed said street; and that said track was to be used for transportation of freight only, and not for the passing of any passenger, baggage, or combination car. The petition further alleges that the city of Des Moines and its street commissioners have wrongfully interfered with plaintiff's track at the crossing so made, and propose to tear it up and remove it from said street. To restrain such action an injunction is prayed.

Answering the petition, defendants deny the plaintiff's authority to lay its track across said street without the authority or consent of the city council, and deny that such consent has

ever been asked or granted. Defendant further alleged that plaintiff is an interurban railway, the cars of which are operated by electricity, and that said railway within the city of Des Moines is a street railway, subject to the laws, rules, and regulations applicable to street railways; that plaintiff's railway extends beyond the corporate limits of Des Moines to another city; that plaintiff was operating under Ordinance 2406 of the 1916 Revised Ordinances of the city of Des Moines; that, under the terms of said ordinance, plaintiff is required, before laying its tracks upon any street in the city of Des Moines, or before extending its track across said street, to first secure consent of the city council and the superintendent of streets; that no such consent has been secured; and that plaintiff unlawfully maintains its spur track on and across New York Avenue.

The cause was submitted to the court below on a stipulation of facts dictated into the record by counsel. The stipulation is quite extensive, and contains matters having no very essential bearing upon the merits of the controversy. Material facts set forth in the stipulation and relied upon by plaintiff are as follows:

"It is hereby stipulated by and between the parties hereto that the city of Des Moines is a municipal corporation, organized and existing under the laws of Iowa; that the Interurban Railway Company is a corporation organized and existing under the laws of the state of Iowa, and engaged in the operation of an interurban railway extending from Des Moines to the town of Perry, and from Des Moines to the town of Colfax; that it is engaged in transportation of passengers and freight by electric motor power; that, on or about the 1st day of August, 1920, the Interurban Railway Company began the construction of a freight spur track across certain property that belonged to the Consumers Ice Company, the Consumers Ice Company owning the property on both sides of New York Avenue; that the said freight track or spur track was constructed in such a manner as that it was not in front of any property abutting upon a street, except the property of the Consumers Ice Company, who consented to the construction of the track; and that it was constructed for the purpose of hauling freight to their plant and other plants along the line of the spur track, some then in existence and

others in contemplation; that on the 15th day of May, 1920, there was served upon W. H. McHenry, General Counsel of the Interurban Railway Company, a letter signed by E. Tracy Blagburn, as follows:

" 'You and each of you are hereby notified that it has come to the attention of the Department of Streets and Public Improvements of the city of Des Moines, that an industrial track is being constructed by the Consumers Ice Co., and under the direction of the Interurban Railway Co., over and along certain private property north of New York Ave., between 6th and 7th Sts., and that it is the intention of the said Consumers Ice Co. and Interurban Railway Co. to conduct said track over and across New York Ave., to private property controlled by the Consumers Ice Co., and

" 'Whereas, neither the Consumers Ice Co., or the Interurban Railway Co., have obtained permission from the city of Des Moines by proper procedure to cross said New York Ave. at any point west of 6th Ave., by ordinance of the city of Des Moines, therefore, by direction of the corporation counsel of the city of Des Moines, you and each of you are hereby notified not to cross said New York Ave. west of 6th Ave. with said track, unless application is made to the city council and right to cross said street be granted by ordinance in the regular manner, and further,

" 'That if said track be constructed across New York Ave. west of 6th Ave., by the Consumers Ice Co. under the direction of the Interurban Railway Co. the city of Des Moines will immediately cause said track to be torn up and laid aside.'

"It is further stipulated and agreed that the line shown on the plat Exhibit 'A' is built on the property of the Consumers Ice Company, by their consent, and that the said track is used and can be used only for the transportation of freight, and not for passenger service. The said spur track referred to and in controversy here turns off of the main track of the Interurban Railway Company north of Corning Street, as shown in yellow on the plat Exhibit 'A'; * * * that the Interurban Railway Company owns its own track, beginning at the Belt Line bridge across the Des Moines River, running from thence to Perry and Colfax, and south of the Belt Line bridge the tracks belong to

the Iowa Terminal Company, each company owning its own poles, electric wires, and overhead equipment.''

Material facts contained in the stipulation relied upon by defendant are as follows:

''That, prior to the service of the notice which has been marked Exhibit 'B,' the city had passed a resolution directing the legal department to secure by condemnation all of the ground within the following limits, for park and athletic purposes, shown by plat Exhibit 'A,' and bounded as follows: Beginning at a point somewhere just north of Holcomb Avenue, and extending north to Corning Street, the width of the tract to be 132 feet west of the west line of Sixth Avenue; and that the city had also, prior to the serving of the notice of suit, passed a resolution and directed the condemnation of all ground, including the ground over which the switch track in question was later built, west of Sixth Avenue and north of Holcomb, and south of Corning, east of Seventh Street. We would like also in the record that the Interurban Railway Company does not now have and never has had any franchise or other grant from the city of Des Moines for the operation of its street railway within the limits, except such right or grant or franchise as may be contained in what is known as Ordinance No. 2406 of the 1916 Revised Ordinances of the city of Des Moines, the ordinance referred to being found on pages 790 to and including page 825, which is known as the franchise ordinance of the Des Moines City Railway Company.''

II. From the pleadings and the stipulation of facts it appears: That appellant is a corporation organized under the laws of the state of Iowa, engaged in the operation of an interurban railway, propelled by electrical power, extending from Des Moines to the town of Perry and from Des Moines to the town of Colfax; that appellee city is a municipal corporation organized and existing under the laws of Iowa, and that appellee John Budd was its commissioner of streets; that, when this suit was commenced, on August 9, 1920, appellant was building and had about completed a spur track in North Des Moines, branching off from its main line a short distance north of Corning Street, extending southward about parallel with Sixth Avenue, across Corning Street, and thence across a block to New York

Avenue, and thence across New York Avenue, crossing the said avenue at right angles. This spur track was being built by and with the consent of the owners of the property upon which it was laid, and of the property on both the north and south sides of New York Avenue abutting on the spur track, and was being constructed for the purpose of hauling freight to and from the plant of the Consumers Ice Company and to and from other plants along the line of the spur, some then in existence and others in contemplation. It appears by the stipulation that the spur track is to be used and can only be used for the transportation of freight; not for passenger service. It also appears that, on May 15, 1920, notice was served on appellant, notifying it that it must not cross said New York Avenue with its spur track without first obtaining from the city a right to do so by ordinance. It also appears that, prior to the service of this notice, the city council passed a resolution authorizing condemnation proceedings to secure for park purposes land traversed by said spur for some distance. It also appears that, some three or four days before this suit was commenced, appellee city, through its street department, began to tear up the spur track across New York Avenue, and was so engaged when stopped by temporary injunction issued in this cause. It further appears that appellant had no franchise for the operation of its railway within the city limits, except such franchise, grant, or right as may be contained in the franchise ordinance of the Des Moines City Railway Company, Ordinance No. 2406, passed October 2, 1915, and accepted by the Des Moines City Railway Company on January 26, 1916.

III.    The concrete question involved in this cause is whether an interurban railway has the right, without consent of the city, to construct and maintain a track for interurban railway freight purposes across a street at right angles, or at such an angle as not to involve the property of others. Appellant bases its right to construct its spur track across New York Avenue, without. consent of the city, on the following statutes and the holdings of some cases construing said statute:

"Code Section 2017. Any such corporation may raise or lower any turnpike, plank road or other road for the purpose of having its railway cross over or under the same, and in such

cases said corporation shall put such road, as soon as may be, in as good repair and condition as before such alteration.''

"Code Supplement, 1913. Section 2033-a. Any railway operated upon the streets of a city or town by electric or other power than steam, which extends beyond the corporate limits of such city or town to another city, town or village, or any railway operated by electric or other power than steam, extending from one city, town or village to another city, town or village, shall be known as an interurban railway, and shall be a work of internal improvement.

"Section 2033-b. The words railway, railway company, railway corporation, railroad, railroad company, and railroad corporation, as used in the Code and Acts of the General Assembly, now in force or hereafter enacted, are hereby declared to apply to and include all interurban railways, and all companies or corporations constructing, owning or operating such interurban street railways, and all provisions of the Code and Acts of the General Assembly, now in force or hereafter enacted, affecting railways, railway companies, railway corporations, railroad, railroad companies and railroad corporations, are hereby declared to affect and apply in full force and effect to all interurban railways, and to all interurban railway companies or railway corporations constructing, owning or operating such interurban railways.

"Section 2033-c. Any interurban railway shall within the corporate limits of any city or town, or of any city acting under a special charter, upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels, packages, and freight as it may carry in its passenger or combination baggage cars only, be deemed a street railway, and subject to the laws governing street railways.''

Plaintiff also relied negatively upon the limitations of Sections 767 and 775 of the Code of 1897, which sections are as follows:

"Section 767. Cities and towns shall have the power to authorize or forbid the construction of street railways within their limits and may define the motive power by which the cars thereon shall be propelled; and to authorize or forbid the location and laying down of tracks for railways and street railways

on all streets, alleys and public places; but no railway track can thus be located and laid down until after the injury to property abutting upon the street, alley or public place upon which such railway track is proposed to be located and laid down has been ascertained and compensated for in the manner provided with reference to taking private property for works of internal improvement.''

''Section 775.  Cities and towns shall have the power to. authorize and regulate telegraph, district telegraph, telephone, street railway and other electric wires, and the poles and other supports thereof, by general and uniform regulation, and to provide the manner in which, and places where, the same shall be placed upon, along or under the streets, roads, avenues, alleys and public places of such city or town, and may divide the city into districts for that purpose.''

Defendant relies affirmatively upon Section 2033-c, above quoted, and Section 2033-d, Code Supplement, 1913, which reads as follows:

''Cities and towns and cities acting under special charters shall have power to authorize or forbid the construction of such railways upon, or over, or along the streets, alleys and public grounds within their limits and to prescribe the conditions and regulations under which said railways shall be constructed and operated within said limits. * * * This act shall not in any manner affect Sections * * * 776 of the Code, which shall be applicable to interurban railways.''

Defendant also relies upon Code Sections 767, 775, above quoted, and upon other statutes which confer upon the city council power over and supervision of its streets, such as Code Sections 753, 754, 755, and 756.

IV.  It would seem that a railway such as plaintiff's may possess the dual character of being .a commercial railway in part of its operations and a street railway in other operations. Undoubtedly, plaintiff's railway comes within the definition of Section 2033-a, and is, as the record in this case shows it is operated, an interurban railway.  Code Supplement Section 2033-b; *Cedar Rapids & M. C. R. Co. v. Cummins,* 125 Iowa 430; *Anhalt v. Waterloo, C. F. & N. R. Co.,* 166 Iowa 479. Under Section 2033-c of the Code Supplement, 1913, plaintiff railway, if

engaged in passenger traffic within the city, would be deemed a street railway, within the corporate limits of the city, "upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels, packages, and freight as it may carry in its passenger or combination baggage cars only." In the case at bar, said Section 2033-c is without application, because it is agreed that the track in question is to be used for the transporting of freight only. Code Section 2017 confers the right upon a steam or commercial railway company to cross a street with its track, without permission of the city council, where the crossing is made at such an angle that there is no abutting property affected. *Gates v. Chicago, St. P. & K. C. R. Co.*, 82 Iowa 518; *Morgan v. Des Moines Union R. Co.*, 113 Iowa 561. By Section 2033-b, Code Section 2017 is made to apply with full force and effect to interurban railways. Section 2033-a would also seem to have that effect.

Section 2033-d is relied upon by defendant as qualifying Code Section 2017. Section 2033-d purports to authorize cities to "forbid the construction of such railways upon, or over, or along the streets," etc. In *Anhalt v. Waterloo, C. F. & N. R. Co.*, supra, we considered Section 2033-d in connection with the preceding sections, and also Code Section 767. In the *Anhalt* case, an interurban railway, doing both a freight and passenger business, sought to be classified as a street railway. We said:

"It is contended, however, that Section 2033-d gives to the city a right to prescribe the conditions and regulations under which interurban railways shall be constructed and operated within city limits. We do not think, however, that this subdivision of Section 2033 can be so construed as to limit the operations of Section 2033-b. Section 2033-b clearly puts interurban railways under the ban of Section 767 of the Code. This subdivision gives to the city the power to authorize or forbid the construction of interurban railways upon the street, and to prescribe the conditions and regulations under which they shall be constructed upon the street and operated within the limits of the city. The two sections can be construed together and work harmoniously. By incorporating Subdivision 'b' into and making it a part of Section 767, we give to the abutting property owner a right to consequential damages; and Subdivision

'd' gives to the city the right to prescribe the conditions and regulations under which the railway shall be constructed on the street and operated within the limits of the city after so constructed; and these two, viewed in the light of Subdivision 'b,' show that the purpose of the legislature was to put interurban railways in the same category with commercial railways, except as provided in Subdivision 'c,' and this must have been clearly upon the thought that the use of an interurban railway for transporting freight and general freight traffic imposes an additional servitude upon abutting property, for which compensation ought to be made.''

Code Sections 767 and 775 have been construed to relate to the occupancy of streets longitudinally, and not to the crossing of the streets. *Gates v. Chicago, St. P. & K. C. R. Co.,* supra; *Morgan v. Des Moines Union R. Co.,* supra; *Enos v. Chicago, St. P. & K. C. R. Co.,* 78 Iowa 28.

It follows from the construction placed upon the above quoted statutes, and we reach the conclusion, that Code Section 2017 confers the right upon plaintiff to cross the street in question, and that none of the above quoted statutes abrogate such right.

Defendant relies upon Code Section 753 as giving to it complete control of its streets, and, therefore, power to forbid plaintiff from crossing the street in controversy. Said section reads:

''They shall have the care, supervision and control of all public highways, streets, avenues, alleys, public squares and commons within the city, and shall cause same to be kept open and in repair and free from nuisances.''

We do not think Section 753 can be given the effect upon Section 2017 contended for by defendant. Said section was in existence when we construed Section 2017 in the above cited cases.

We reach the conclusion that Section 2017 is in full force and effect according to its terms, and that, under Section 2033-b, the plaintiff, the interurban railway, in its operation in transporting freight, comes clearly within its provisions.

Defendant also contends that Ordinance No. 2406, the only municipal authorization by which plaintiff could have the right

to cross New York Avenue with its spur track, does not confer upon plaintiff such right, and that, therefore, it has no such right. The ordinance is a long and complicated instrument. We do not think it necessary to set it forth. It is sufficient to say that nothing in said ordinance brings the interurban railway under its provisions. It binds the Des Moines City Railway Company, and authorizes said company to lease its lines, subject to the city's approval. In fact, we think it excludes interurban railway companies from its terms. We think said ordinance in no way affects the instant case.

We reach the conclusions: That plaintiff is an interurban railway; that, as a carrier of freight, it has the same right to build across a street as a commercial or steam railway; that it has the right to cross the street in controversy without consent of the city council, subject, however, to proper regulations.

Results in reversal.—*Reversed.*

EVANS, PRESTON, STEVENS, FAVILLE, DE GRAFF, and VERMILION, JJ., concur.